# IN THE UNITED STATES COURT OF APPEALS

# FOR THE FIFTH CIRCUIT

_____

m 01-11042

_____


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

VERSUS

THOMAS REEDY
AND
JANICE REEDY,

Defendants-Appellants.


_____

Appeals from the United States District Court
for the Northern District of Texas

_____

August 26, 2002


Before JOLLY, SMITH, and DEMOSS,
Circuit Judges.

JERRY E. SMITH, Circuit Judge:

Thomas and Janice Reedy appeal their con-victions of, and sentences for, transporting "visual depictions" of "minors engaging in sex-ually explicit conduct," in violation of 18 U.S.C. § 2252, and transporting "child pornog-raphy," in violation of 18 U.S.C. § 2252A. Websites specializing in child pornography

paid the Reedys a portion of their profits to establish a sign-on, screening, and age verification system for subscribers.

The government agrees that the district court imposed multiplicitous sentences by counting each image posted as a violation of two statutes that criminalize the same conduct. Accordingly, the court should resentence using § 2252 for the substantive counts of transporting visual depictions of minors engaging in sexually explicit activity.

The parties disagree, however, as to what "unit of prosecution" should apply for a violation of § 2252. Because the statute does not speak to the question, the rule of lenity requires resentencing based on the number of websites rather than the number of individual images. We vacate and remand for resentencing only and reject the Reedys' other arguments.

I.

In April 1999, United States Postal Inspector R.C. Adams contacted Detective Steve Nelson of the FBI's Crimes Against Children Task Force assigned to the Dallas Police Department's Child Exploitation Unit. Adams requested Nelson's aid in investigating an Internet website named "kintamani.com," which linked to another website named "Lolita World." Nelson agreed to access the website as part of an undercover investigation.

To gain access to all the information on the website, a prospective subscriber was prompted to go to a sign-up page hosted by "KeyZ." The subscriber then had to provide his or her name, address, and a credit card number to which to charge a fee of $29.95 for thirty days' access. Nelson purchased access and found pornography on "Lolita World" that in-

volved children ranging from infants to teenagers. Further investigation uncovered that Landslide, Inc. ("Landslide"), provided a computerized credit card verification service used by various webmasters whose websites contained adult and child pornography. Landslide offered access under (1) the adult verification system ("AVS") and (2) the "KeyZ" system.

AVS subscribers paid $19.95, which provided six months' access to all the websites under the AVS umbrella. The websites accessed through AVS offered adult pornography only.

KeyZ subscribers purchased access to specific sites at $29.95 per month. Landslide retained a portion of the money collected, and the webmasters received the rest. Under the KeyZ system, Nelson found twenty-eight websites depicting child pornography. These websites included Lolita Hardcore/Fucking Little Kids, Blackcat Lolita, Children of God, Children Forced to Porn, Just Grow Up, Child Rape, Children Playground, Innocent Lolita, Fantastic Site, and Special Site.

Nelson captured information from some of the websites by using an Internet card that permitted him to record the information onto a video cassette recorder. He also used a software package called "Web Buddy" to capture the information from the websites and copy it onto the hard drive of his computer so he could view it offline. He determined the locations of the websites from which the child pornography originated by using a software package called "VisualRoute." The location of each image of child pornography alleged in the indictment was traced to an internet service provider outside Texas.

The Landslide and AVS homepages dis-

2

played banners, or online advertisements with hyperlinks, alerting potential subscribers to the availability of child pornography on various websites. In addition, Landslide offered a free "adult classified advertisements" section on the website that showed banners advertising child pornography. On reviewing the ads, Nelson found postings by persons wanting to trade child pornography, to have sexual contact with children, and to trade KeyZ passwords.

The Reedys were the owners and operators of Landslide, and Thomas Reedy was its founder. Janice Reedy held various positions with the company beginning in January 1998, including handling its financial transactions. During an interview with law enforcement agents, Thomas Reedy admitted that he and his wife knew some of the websites contained child pornography and that child pornography represented thirty to forty percent of his business. The Reedys had authored and received emails indicating that they were aware that some of the websites on the KeyZ system offered child pornography and that the Reedys knew the transmission of child pornography was illegal.

During a search of the Reedys' residence in September 1999, law enforcement agents seized a desktop computer and a notebook computer. The basis of Count 89 was seventy-one child pornography images from the desktop computer. The police found three images of child pornography on the notebook computer.

Landslide's gross sales from September 1997 through August 1999 were $9,275,964; $204,025 was returned to dissatisfied customers. Landside incurred costs of $6,103,517. Based on this information, the auditor determined that Landslide had made a profit of $2,968,422 and that $1,290,412 of the proceeds came from the eleven websites named in the indictment.

II.

The eighty-nine-count superseding indictment charged the Reedys with various offenses arising from their participation in the transmission of child pornography over the Internet. Count 1 charged conspiracy to transport "any visual depiction" produced through the use of "a minor engaging in sexually explicit conduct," in violation of § 2252(a)(1) and (b)(1). Counts 2 through 44 charged the substantive offenses of transporting and aiding and abetting the transport of visual depictions produced through the use of minors engaging in sexually explicit conduct, in violation of §§ 2252 and 2. Count 45 charged conspiracy to commit activities relating to material constituting or containing child pornography in violation of § 2252A(a)(1) and (b)(1). Counts 46 through 88 charged committing activities relating to material constituting or containing child pornography and aiding and abetting in violation of §§ 2252A and 2. Count 89 alleged possession of a computer disk and computer material containing approximately fifty images of child pornography produced by means of a computer using material shipped and transported in interstate commerce, in violation of § 2252A, which is part of the Child Pornography Prevention Act of 1996, 18 U.S.C. § 2251 *et seq.*

The jury found Thomas Reedy guilty on counts 1 through 89 and Janice Reedy guilty on counts 1 through 87. The court sentenced Thomas Reedy to 180 months' consecutive imprisonment on each count, plus three years' supervised release on each count, to run concurrently, and a special assessment of $8,900. His prison term would have equaled

1,335 years, so the court ordered that he serve a life sentence.

Janice Reedy received 168 months' imprisonment on each count, to run concurrently, plus three years' supervised release and a special assessment of $8,700. Her prison term totals fourteen years.

### III.

The Reedys allege that their indictment was multiplicitous for three reasons: (1) The indictment twice charges the same conduct as the transportation of materials that sexually exploit minors in violation of § 2252 and the transportation of child pornography in violation of § 2252A. (2) The indictment alleged duplicative conspiracies to violate each of the two statutes. (3) The indictment and the district court incorrectly viewed the number of pictures, rather than the number of websites, as the relevant unit of analysis under § 2252.

### A.

We review issues of multiplicity *de novo*. *United States v. Dupre*, 117 F.3d 810, 818 (5th Cir.1997). "'Multiplicity' is the charging of a single offense in several counts." 1A CHARLES A. WRIGHT, FEDERAL PRACTICE AND PROCEDURE § 142, at 7-8 (West 3d ed. 1999) "The chief danger raised by a multiplicitous indictment is the possibility that the defendant will receive more than one sentence for a single offense." *United States v. Swaim*, 757 F.2d 1530, 1537 (5th Cir.1985).

Where overlapping statutory provisions create a risk of multiplicity, "[t]he test for determining whether the same act or transaction constitutes two offenses or only one is whether conviction under each statutory provision requires proof of an additional fact which the

other does not." *United States v. Nguyen*, 28 F.3d 477, 482 (5th Cir. 1994) (citing *United States v. Free*, 574 F.2d 1221, 1224 (5th Cir.1978)). Where a multipart transaction raises the prospect of multiplicity under a single statute, the question becomes "'whether separate and distinct prohibited acts, made punishable by law, have been committed.'" *United States v. Shaid*, 730 F.2d 225, 231 (5th Cir.1984) (quoting *Bins v. United States*, 331 F.2d 390, 393 (5th Cir.1964)).

### B.

We first consider whether the government properly charged two counts for each image by charging separate violations of §§ 2252 and 2252A. The government acknowledges that it could not properly charge a violation of both statutes for each image but argues that Thomas Reedy waived this argument in the district court. A defendant must challenge the multiplicity of an indictment before trial or forfeit the issue. *United States v. Soape*, 169 F.3d 257, 265-66 (5th Cir. 1999). He may, however, raise claims about the multiplicity of sentences for the first time on appeal.[1] Thomas Reedy's appellate brief repeatedly characterizes his challenge as one to the multiplicitous sentences, which eliminates any possibility of waiver.[2]

Thomas Reedy so phrased his challenge in

---

[1] *Soape*, 169 F.3d at 265-66; *United States v. Cooper*, 966 F.2d 936, 940 (5th Cir. 1992). The defendant may not challenge concurrent sentences after waiving the multiplicity objection before trial, but the court imposed Thomas Reedy's sentences consecutively. *United States v. Galvan*, 949 F.2d 777, 781 (5th Cir. 1991).

[2] The government does not argue that Janice Reedy waived challenges to the multiplicity of the indictment or the multiplicity of the sentence.

the district court as well. The government concedes that Janice Reedy raised these objections at trial. She objected "pursuant to the previously filed motion to dismiss the indictment, and . . . that motion alleged that the indictment itself is multiplicitious." She stated that the government responded to the challenge to the indictment by stating that it would elect among the charges later, and she sought to remind the court of that at sentencing.

Thomas Reedy's attorney joined in the argument by referencing the district court's scheduling order, which permitted co-defendants to join in one another's objections and motions. Because Thomas Reedy consistently ratified Janice Reedy's challenges based on the multiplicity of the sentence, and he has presented them on appeal, he has preserved the argument for our review.

On remand, the district court should resentence for each violation of § 2252 and not § 2252A. Section 2252(a) criminalizes the "transport" of "visual depictions" of "minors engaging in sexually explicit conduct." Section 2252A(a) criminalizes the transportation or distribution of "child pornography." Section 2556(8)(B)-(D) defines "child pornography" broadly to include a visual depiction that "appears to be a minor engaging in sexually explicit conduct," a "depiction" "created, adapted, or modified to [so] appear," or one advertised as a visual depiction of a minor engaged in such conduct. 18 U.S.C. § 2256(8)(B)-(D). In *Ashcroft v. Free Speech Coalition*, 122 S. Ct. 1389, 1400-01, 1406 (2002), the Court struck down this definition of "child pornography" as overbroad.

Accordingly, the court should resentence the Reedys without including the substantive violations of § 2252A.[3] The court should not consider counts 46 to 88, which are duplicative of the earlier-numbered counts, nor should it consider count 45, which alleges a duplicative conspiracy to violate § 2252A.

C.

In determining the sentence,[4] the district court used the total number of images appearing on all the websites as the relevant "unit of prosecution" for determining the number of counts for violating § 2252. The Reedys contend that the court should have used only the number of websites.[5] The government responds that the Reedys should, theoretically, bear liability for each download

---

[3] By striking down the overbroad portions of the child pornography definitions, the Court made §§ 2252 and 2252A indistinguishable. Section 2252 regulates "any visual depiction" if it "involves the use of a minor engaging in sexually explicit conduct." § 2252(a)(1). Section 2252A regulates "child pornography," but the only remaining, constitutional definition of "child pornography," 18 U.S.C. § 2256(8)(A), defines it as a "visual depiction." The district court should resentence based on § 2252, to avoid additional issues that might arise under § 2252A. The two statutes are functionally identical.

[4] The government mistakenly asserts that in their brief on appeal, the Reedys challenge the validity only of the indictment, not the sentence. The Reedys plainly challenge both.

[5] The Reedys contend that there were 10 web-sites containing child pornography and that, accordingly, there should have been only 10 counts for violation of each of §§ 2252 and 2252A instead of 43 counts for each section. We leave it to the district court, on remand, to determine how many counts should be considered in sentencing, in accordance with this opinion.

5

of each picture from each website on the KeyZ network.[6]

To determine whether the Reedys' conduct gives rise to multiple convictions or punishments, we must, therefore, determine the "allowable unit of prosecution." *United States v. C.I.T. Credit Corp.*, 344 U.S. 218, 221 (1952); *United States v. Prestenbach*, 230 F.3d 780, 782 (5th Cir. 2000). We begin with the language of § 2252 to determine whether it precisely delineates the criminal act. *United States v. Dixon*, 273 F.3d 636, 642 (5th Cir. 2001), *petition for cert. filed* (Apr. 3, 2002) (No. 01-9579).

Section 2252(a) makes it a crime "knowingly" to "ship" or "transport" in "interstate commerce" "any visual depiction" of "a minor engaging in sexually explicit conduct." We have explained the problem posed by the use of the word "any," and our method for resolving it:

> Since "any" can mean "one" or "some," courts have determined the unit of prosecution by reference to the conduct alleged. Courts apply the following rule: "Whether a transaction results in the commission of one or more offenses

is determined by whether separate and distinct acts made punishable by law have been committed." The principle underlying this rule is that the "unit of prosecution" for a crime is the actus reus, the physical conduct of the defendant.

*Prestenbach*, 230 F.3d at 783.[7]

The word "transport" is fairly straightforward,[8] but closely examining the meaning of "visual depiction" only complicates matters. We start by considering whether a "visual depiction" is neatly confined to an individual image or encompasses a broader set of items, such as books, magazines, movies, or other collections.

Section 2256 defines a "visual depiction" as "including any photograph, film, video, picture, or computer or computer-generated im-

---

[6] As the government acknowledged in response to questioning at oral argument, its position is that a new count, potentially carrying an additional prison term of 15 years, can be added every time any subscriber downloads an image. Take, hypothetically, one website with 100 child pornographic pictures. If each of 100 subscribers were to download each of the 100 pictures just once, the defendant could be charged with 10,000 counts, for a potential sentence of 150,000 years. Such an extreme interpretation of Congressional intent undermines the reliability and credibility of the government's case on appeal.

[7] The word "any" has troubled many courts. *E.g., United States v. Esch*, 832 F.2d 531, 541-42 & n.9 (10th Cir. 1987). "Any" conveys multiple meanings about the necessary amount. It alternately may refer to "one, some, or all indiscriminately of whatever quantity" or "the maximum or whole of a number or quantity." WEBSTER'S THIRD NEW INTERNATIONAL UNABRIDGED DICTIONARY 97 (Merriam-Webster 1986).

[8] In *United States v. Runyan*, 290 F.3d 223, 239 & n.11 (5th Cir. 2002), for example, we interpreted "transport" in interstate commerce under 18 U.S.C. § 2251's jurisdictional requirement to include the "transmission of material via the Internet." We interpreted "transport" as an element of the offense under § 2252A as requiring "some evidence linking the specific images supporting the conviction to the Internet." *Id.* at 242. Neither definition adds much to the current inquiry.

age or picture, whether made or produced by electronic, mechanical, or other means." 18 U.S.C. § 2256(5). This list includes both items that may be classified as a single shot of a single scene, such as a still photograph, and series of shots of several scenes or ongoing action, such as a film or video. The statute contemplates "visual depictions" as constituting both single images and more than one image.

Other portions of § 2252 demonstrate that Congress recognized that a "visual depiction" might include one or several images. Section 2252(a)(4)(B) forbids the possession of "books, magazines, periodicals, films, video tapes, or other matter which contain any visual depiction" sent through interstate commerce.[9] And § 2252(c)(1) creates an affirmative defense for persons possessing "less than three matters containing any visual depiction." These references tell us that a "matter" is larger and inclusive of a "visual depiction," but they do not explain the size or inclusiveness of a "visual depiction."[10] Standing alone, the text

of § 2252 fails to resolve the question, so we turn to our one precedent interpreting related issues under that section.[11]

In *United States v. Gallardo*, 915 F.2d 149, 150 (5th Cir. 1990), the defendant mailed four envelopes addressed to four persons in various locations, and argued that because he mailed three envelopes at the same time, the court should consider them as a single count. In a passage on which both sides focus here, we held that the three envelopes should count as three, and only three, counts:

> [E]ach separate use of the mail to transport or ship child pornography should constitute a separate crime because it is the act of either transporting or shipping that is the

---

[9] In the course of resolving a separate statutory interpretation question, the Eighth Circuit, at least, has classified a video tape as a "visual depiction". *United States v. Broyles*, 37 F.3d 1314, 1317 (8th Cir. 1994).

[10] The First Circuit has held that a single negative strip with three undeveloped photos is one "matter." *United States v. McKelvey*, 203 F.3d 66, 71 (1st Cir. 2000). The Second Circuit invoked the rule of lenity to hold that several individual loose pictures removed from a magazine do not count as a "matter." *United States v. Dauray*, 215 F.3d 257, 264-65 (2d Cir. 2000).

Courts have divided over whether individual graphic computer files count as a "matter." *Compare United States v. Vig*, 167 F.3d 443, 448 (8th (continued...)

---

[10](...continued)
Cir. 1999) (holding individual files count as "other matter") *with United States v. Lacy*, 119 F.3d 742, 748 (9th Cir. 1997) (holding that computer files are not "other matter," but a hard drive and floppy disc are).

[11] Other jurisdictions have addressed similar but not identical questions, and their opinions shed only limited light on the question before us. *E.g.*, *United States v. Thompson*, 281 F.3d 1088, 1091, 1097-98 (10th Cir. 2002) (interpreting U.S.S.G. § 2G2.4(b)(2)'s use of the word "item" to refer to individual computer files and not discs); *United States v. Matthews*, 11 F. Supp. 2d 656, 659 (D. Md. 1998) (holding that a single email transmission should establish a single count), *aff'd*, 209 F.3d 338 (4th Cir. 2000); *United States v. Meyer*, 602 F. Supp. 1480, 1481 (S.D. Cal. 1985) (invoking rule of lenity to hold that a person could not face two counts for sending and receiving the same picture); *United States v. Labean*, 56 M.J. 587, 590 (C.G. Ct. Crim. App. 2001) (holding that downloading 25 separate pictures from a single website in 18 minutes established 25 counts).

central focus of this statute. Gallardo mailed four separate envelopes containing child pornography, thus committing four separate acts of transporting or shipping. The number of photographs in each envelope is irrelevant. In contrast, a defendant arrested with one binder containing numerous photographs has committed only one act of transportation. Similarly, a single transportation of two women is but one violation of the Mann Act.

*Id.* at 151 (citation omitted).

The government emphasizes that we parsed the placing of the three envelopes into the mail. The Reedys highlight that we permitted only one count for each envelope and labeled improper an attempt to charge the defendants for each picture contained in the envelope. *Gallardo* is not especially similar to the instant case, so we take from it only a single proposition: Where a defendant has a single envelope or book or magazine containing many images of minors engaging in sexual activity, the government often should charge only a single count.

Consider the Reedys' actions: They established a security screening device that aided and abetted the website operators who purveyed child pornography. The Reedys chose to bundle their service by website; they charged for subscriptions to individual websites under the KeyZ plan. As the defendant in *Gallardo* chose to collect several pictures in an envelope, or the publisher of a magazine of child pornography chooses to collect several images in a periodical, the Reedys chose to bundle in this manner. *Gallardo* cuts slightly in favor of the Reedys' interpretation.

We are faced, then, with what to do where, as here, a criminal statute fails to provide an answer to a question.[12] The Supreme Court provided the answer almost fifty years ago when faced with this interpretive dilemma. In *Bell v. United States*, 349 U.S. 81, 82 (1955), the Court considered whether the Mann Act's prohibition against knowingly transporting "any woman or girl" in interstate commerce for an immoral purpose supported two counts for transporting two women at the same time in the same vehicle. The Court reached the same impasse that we have reached today. Because "argumentative skill" "could persuasively and not unreasonably reach" either interpretation, the Court ruled that the "ambiguity should be resolved in favor of lenity," and the government could charge only one count. *Id.* at 83.[13] We reach the same

---

[12] The legislative history is not particularly helpful; neither is a restatement of the statute's purpose. Obviously, Congress sought to prevent the abuse and exploitation of children and to discourage the secondary market that fosters that abuse. Reciting the purpose of a criminal law, however, provides no information about the level at which Congress chose to set the penalties. Presumably that purpose was not limitless, or Congress would have established life sentences for each violation of the statute. Neither the legislative history nor the purpose is fine-grained enough to resolve the question before us.

[13] We invoke the rule of lenity only where "a reasonable doubt persists about a statute's intended scope even after resort to the language and structure, legislative history, and motivating policies of the statute." *Moskal v. United States*, 498 U.S. 103, 108 (1990). Despite its status as a tool of last resort, this principle has a long and established history in the Supreme Court and this circuit. Where, after seizing everything from which aid can be derived, the statute remains am-
(continued...)

conclusion here and decide that the district court erred by permitting the prosecution to group the counts by individual image rather than website.[14]

## IV.

The Reedys raise two challenges to the jury instructions: (1) The instructions reflected the multiplicitous counts and biased the jury by making the defendants appear twice as guilty. (2) Thomas Reedy argues that the court erroneously instructed the jury that it only need find he possessed one "visual depiction" under count 89. We review each in turn.

### A.

We review challenges to jury instructions

for abuse of discretion. *United States v. Young*, 282 F.3d 349, 353 (5th Cir. 2002). A conviction will be reversed only if the charge "as a whole leaves us with substantial and in-eradicable doubt as to whether the jury has been properly guided in its deliberations." *Bender v. Brumley*, 1 F.3d 271, 276 (5th Cir. 1993) (citation and internal quotation omitted). Even if the instructions are erroneous, we will not reverse if we determine, "based upon the entire record, that the challenged instruction could not have affected the outcome of the case." *Johnson v. Sawyer*, 120 F.3d 1307, 1315 (5th Cir.1997).

### B.

The Reedys argue that including instructions on multiplicitous counts allowed the jury to find them guilty on counts deemed unconstitutional under the Double Jeopardy Clause of the Fifth Amendment. The Reedys reason that these instructions prejudiced the jury on all counts included in the indictment by making the Reedys "appear two times guiltier, with twice the opportunity for the jury to find guilt."

The government argues that dismissing the multiplicitous counts would render any jury error harmless, because the court expressly instructed the jury to consider guilt on each count separately. The relevant jury instructions provided:

> A separate crime is charged in each count of the indictment. Each count and the evidence pertaining to that count should be considered separately and individually. The fact that you may find the defendant under consideration guilty or not guilty as to one or more counts should not control your verdict as to any other count.

---

[13](...continued)
biguous, the rule of lenity may be applied. *Adamo Wrecking Co. v. United States*, 434 U.S. 275, 284-285 (1978) ("[W]here there is ambiguity in a criminal statute, doubts are resolved in favor of the defendant."); *Rewis v. United States*, 401 U.S. 808, 812, (1971) ("[A]mbiguity concerning the ambit of criminal statutes should be resolved in favor of lenity."); *Prestenbach*, 230 F.3d at 784 n.23 ("If uncertainty remains after our interpretation of the text and its underlying policies, the rule of lenity requires a narrow construction of the law.").

[14] We emphasize that this case is limited to a security screening system that aggregates websites containing child pornography. We do not intimate a particular result where a website operator uses a single site to aggregate and distribute individual pictures. We are particularly loath so to hint, because child pornographers merely could change their distribution methods if we announced a bright-line rule. We conclude only, on the facts of this unique case involving a middleman and security screening system, that the court cannot sentence the Reedys based on each individual picture posted.

9

Juries are presumed to follow instructions. *See, e.g., Richardson v. Marsh*, 481 U.S. 200, 206 (1987) (collecting cases). The above instruction should have prevented the multiplicative indictment from influencing the verdict on the valid counts. *Id.*; *see also Dixon*; *United States v. Kimbrough*, 69 F.3d 723, 732 (5th Cir. 1995). A remand for resentencing will cure all error.

## C.

Thomas Reedy argues that the jury instruction on count 89 permitted the jury to convict on findings shy of what § 2252A(a)(5)(b) requires.[15] The instruction on count 89 stated that the jury had to find that "the defendant under consideration knowingly possessed at least one visual depiction containing an image or images of child pornography." Thomas Reedy argues that § 2252A(d), which creates an affirmative defense to a charge of violating § 2252A-(a)(5), requires finding that he possessed at least three images of child pornography. According to Thomas Reedy, he possessed only one itemSSa computer disc drive.

Section 2252A(d) expressly states, however, that it is an affirmative defense. *See United States v. Henriques*, 234 F.3d 263, 264 n.2 (5th Cir. 2000) (stating that § 2252A(d) "gives the defendant an affirmative defense upon a showing that the defendant possessed fewer than three images"). Reedy bore the burden of raising and pleading the affirmative defense, *United States v. Elorduy*, 612 F.2d

986, 900 (5th Cir. 1980), but failed to raise the defense or object to the instruction.[16] The court did not have an obligation to instruct on a non-element of the crime or on an affirmative defense never presented.

## V.

The Reedys raise three objections to the sentence: (1) The relevant conduct calculations erroneously included revenue from both child pornography and (legal) adult pornography. (2) Thomas Reedy did not play a leadership role in the offense. (3) The court failed to resolve all the sentencing objections.

## A.

We review the application of sentencing guidlelines *de novo* but findings of fact for clear error. *United States v. Taylor,* 277 F.3d 721, 723 (5th Cir. 2001). A factual finding is not clearly erroneous if it is plausible in light of the record as a whole. *United States v. Myers*, 198 F.3d 160, 164 (5th Cir. 1999). We review the application of FED. R. CRIM. P. 32(c) *de novo. United States v. Medina*, 161 F.3d 867, 874 (5th Cir. 1998).

## B.

The Reedys contend that the auditor incorrectly established their pecuniary gain as $5,792,475.15, because this figure includes money generated from legal pornographic websites. The Reedys argue that only $1,290,412, which was earned from the websites contained in the indictment, should be considered for establishing the sentencing en-

---

[15] We do not find it necessary to vacate and remand under this count for possession under § 2252A. In *Free Speech Coalition*, 122 S. Ct. at 1406, the Court merely restricted convictions under § 2252A to those the government previously could have obtained under § 2252.

[16] "No party may assign as error any portion of the charge or omission therefrom unless the party objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which that party objects and the grounds of the objection." FED. R. CRIM. P. 30.

hancement under U.S.S.G. § 2F1.1(b)(1)(O). The government responds the district court did not include revenues from the adult pornography websites in its calculation but merely considered revenues from other child pornography sites.

Relevant conduct for which a defendant was not charged or convicted may be considered in determining the guideline range. *See United States v. Taplette*, 872 F.2d 101, 104 (5th Cir. 1989). According to U.S.S.G. § 1B1.3(a)(2), relevant conduct may be based on "all acts and omissions . . . that were part of the same course of conduct or common scheme or plan as to the offense of conviction."

The $5,792,475.15 represented the total amount of pecuniary gain from all the child pornography websites for which Landslide operated its credit card verification system. The auditor testified that his analysis of Landslide's financial records showed $1,290,412 as the total proceeds from the websites named in the indictment. During the sentencing process, however, a second government auditor conducted an audit of KeyZ's financial records and determined that Landslide had earned $5,792,475.15 from all the websites containing child pornography for which it provided a credit card verification system. The court properly considered those sums when establishing the enhancement.

### C.

Thomas Reedy argues that the district court wrongfully found him to be a leader/organizer of criminal activity, resulting in a four-level enhancement under U.S.S.G. § 3B1.1(a). Reedy contends that he was only a "middleman," so his total offense level under U.S.S.G. § 3B1.1(b) should be decreased by one offense level. The government answers that Reedy qualified because his criminal enterprise involved more than five participants.

Under § 3B1.1(a), the offense level may be increased by four "if the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive." According to application note 4, the sentencing court should consider

> the exercise of decision making authority, the nature of the participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercise over others.

U.S.S.G. § 3B1.1, commen. (n. 4).

Reedy quotes Assistant United States Attorney Terri Moore's opening statement to the jury that ". . . subscribers or users . . . needed a middleman, that's where [Appellants] come in. They are a middleman." Marshall also testified that "on the Internet, there's a large group of customers, there's a large group of child pornography sites, and in the middle is landslide/keyz.com basically being the gatekeeper between those two components."

The government notes that under § 3B1.1(a), a defendant should receive a four-level enhancement if he was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive. The presentence report ("PSR") sets forth the following in support of the

recommendation that Thomas Reedy be considered a leader/organizer:

> [T]his case involved a sophisticated, international child pornography scheme which earned in excess of $9,000,000. The superseding Indictment in this case identified five participants in the conspiracy, including [Thomas Reedy], Janice Reedy, R.W. Kusuma, Boris Greenberg, and Hanny Ingganata . . . . [Thomas Reedy] held the position of president within his company and directed the employees identified in paragraph 36. He also developed and implemented the services used to mass-market the child pornography. For these reasons, the 4 level enhancement for being an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive is warranted in this case.

No one challenges the following facts: (1) The criminal activity involved at least five knowing participants. (2) The crime involved the transportation, for remuneration, of child pornography all over the world via the Internet. (3) Thomas Reedy ran the operation: He developed and implemented the KeyZ service for the purpose of mass marketing child pornography to interested subscribers; he actively recruited Webmasters to utilize KeyZ by promising increased profits by tracking subscribers interested in child pornography; if a webmaster failed to follow the rules established by Thomas Reedy for KeyZ, Reedy determined whether the Webmaster would be cut off from the system. The district court had ample evidence to dub Reedy a leader or organizer.

### D.

The Reedys argue that the district court erroneously permitted the presentation of additional evidence. They contend that their counsel "meticulously delineated additional objections to the PSR as having significant impact" but that the court "blatantly skirted past the specific objections without expressly ruling on them nor making finding of fact and conclusions of law in accordance with Rule 32(c)(1) of the Federal Rules of Criminal Procedure." Significantly, they do not explain what objections were made during sentencing.

Thomas Reedy made two objections to the PSR: (1) to the amount of revenue or pecuniary gain and (2) to the four-level increase for his management role in the offense. Janice Reedy objected to the revenue calculations, to a two-level increase for obstruction of justice, and to the denial of a reduction for her minimal role in the offense. In each of the sentencing hearings, the court either overruled or sustained every objection made by the Reedys and adopted the factual findings in the PSR. The court sustained Janice Reedy's objection to the obstruction of justice two-level increase and granted a four-level decrease for her minimal role in the offense.

After overruling Janice Reedy's objection to the pecuniary gain calculation, the court asked her whether she had any objection or evidence to offer regarding the court's tentative findings. She answered in the negative. Therefore, the court adopted the statements of fact made in the PSR as its final findings of fact, subject to and including changes and qualifications made by the court in response to the objections as announced. We cannot identify any issues the court failed to resolve at sentencing.

## VI.

The Reedys aver that they should receive a new trial for two reasons: (1) They have uncovered evidence that impeaches a prosecution witness. (2) The cumulative errors in the indictment and trial require a new adjudication of guilt. We review for abuse of discretion the denial of a new trial based on newly discovered evidence. *United States v. Metz*, 652 F.2d 478, 479 (5th Cir. Unit A Aug. 1981).[17]

## A.

After trial and before sentencing, the government discovered that Marshall, its expert, had failed to disclose that he had been asked to resign from the Fort Worth Police Department because of misconduct, and Thomas Reedy's trial counsel had represented him in an unrelated proceeding years before the instant offense. The government notified trial counsel, who claimed no recollection of having represented Marshall. The Reedys' counsel then filed a Motion To File Motion to Withdraw Under Seal and Counsel's Motion To Withdraw and Request To Present Supporting Evidence Ex Parte. The court granted the request to withdraw.

The new defense counsel filed motions for new trial on the ground that such newly discovered evidence could have been used to impeach Marshall and demonstrated an irreconcilable conflict of interest between Reedy and his trial counsel. The court denied both motions.

Marshall was the Chief Investigator for the Internet Bureau of the Attorney General for

the State of Texas during the trial. Marshall testified about his background and employment as a police officer for the City of Fort Worth in the early 1980's. He also testified that he suggested that Nelson use the software program called Web Buddy to record the child pornography websites. In addition, Marshall testified that he suggested, installed, and helped configure the software program called VisualRoute and the device used to videotape the child pornography images from the Internet.

Marshall explained how VisualRoute worked and how the origination points for the websites demonstrated an impact on interstate and foreign commerce. Thus, most of Marshall's testimony centered on explaining the Internet. On cross-examination, Thomas Reedy's defense counsel stated to Marshall: "[A]pparently we ran into one another when I was a prosecutor or something, because you recall me." Marshall's response was "Yes, sir, I do." Marshall's direct and redirect testimony covered approximately 13.5 pages of the record, and his cross-examination testimony covered almost 35 pages. The Reedys claim that the evidence on the witness's relationship with their attorney should have been further developed.

For a new trial on the basis of newly discovered evidence, a defendant must demonstrate that

> (1) the evidence is newly discovered and was unknown to the defendant at the time of trial; (2) failure to detect the evidence was not due to a lack of diligence by the defendant; (3) the evidence is not merely cumulative or impeaching; (4) the evidence is material; and (5) the evidence introduced at a new trial would

---

[17] Refusal of a hearing on a motion for new trial is also reviewed for abuse of discretion. *Metz*, 652 F.2d at 481.

probably produce an acquittal.

*United States v. Lowder*, 148 F.3d 548, 551 (5th Cir. 1998) (citation omitted). The Reedys have not pointed to any evidence that they would be likely to win an acquittal at a new trial. Marshall's testimony was generic, expert testimony, and the government could always replace him with another expert. He had to testify only about the operation of the Internet, not the age of the girls, because the Reedys conceded, in a police interview, knowledge of illegal child pornography on the websites.

The Reedys do not point to portions of Marshall's testimony that were false, biased, or even material. Nor do they provide any evidence that their counsel was biased by his past representation of Marshall. They do not allege that he failed to cross-examine Marshall thoroughly. And because Marshall said little of significance, a stronger cross-examination would not have led to an acquittal.

## B.

The Reedys argue that the cumulative errors throughout their trial warrant a new trial. We have not found quite as many errors as the Reedys allegedSSin fact, we reverse only on multiplicity grounds. "Although the 'cumulative effect of several incidents . . . may require reversal, even though no single one . . . considered alone would warrant such a result,' this situation is a rarity." *United States v. Lindell*, 881 F.2d 1313, 1327 (5th Cir. 1989) (internal citation omitted). The instant case does not qualify.

The judgments of sentence are VACATED, and this matter is REMANDED for resentencing.