**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**

May 27, 2011

Lyle W. Cayce
Clerk

No. 10-50534

JACOB A. BROCHTRUP,

Plaintiff - Appellee,

v.

MERCURY MARINE, a Division of Brunswick Corporation; SEA RAY, a Division of Brunswick Corporation,

Defendants - Appellants.

Appeal from the United States District Court
for the Western District of Texas
USDC No. 1:07-cv-643

Before DAVIS, CLEMENT, and ELROD, Circuit Judges.

PER CURIAM:*

Jacob Brochtrup was severely injured after his leg made contact with the spinning propeller of a boat engine. He sued the manufacturers of the engine (Mercury Marine) and of the boat (Sea Ray) in Texas alleging that the engine's propeller was defectively designed. Mercury Marine and SeaRay moved for judgment as a matter of law. The district court denied their motions and Brochtrup ultimately obtained a favorable jury verdict. We AFFIRM.

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

10-60095

## FACTS AND PROCEEDINGS

Brochtrup and three others were on Lake Austin in Texas on a 17.6-foot ski boat manufactured by Sea Ray and powered by a 135-hp MerCruiser stern drive engine—also referred to as an inboard/outboard engine—manufactured by Mercury Marine.[1]  The engine or stern drive engine includes a propeller that is hydraulically lowered into and raised out of the water for use.  The boat was in the water with one person driving, two in the water waiting to be towed on wakeboards, and Brochtrup as a passenger.  When one of the tow ropes unhooked from the boat and fell into the water, Brochtrup jumped in behind the boat to retrieve the rope.  The driver put the boat into reverse to stop its forward motion and backed over Brochtrup.  The boat's spinning propeller shredded Brochtrup's right leg, which was ultimately amputated at the hip joint.

Brochtrup filed suit against Mercury Marine and Sea Ray (collectively, "Mercury Marine") in Texas state court alleging a design defect in the boat because of its use of an unguarded propeller.  Mercury Marine removed the suit to federal court based on diversity jurisdiction.  The case proceeded to trial three times.  The first two juries were unable to reach a verdict; the third concluded that there was a design defect and awarded damages to Brochtrup.  Mercury Marine moved for judgment as a matter of law at the conclusion of Brochtrup's case, at the conclusion of its own case, and again after the verdict.  The district court denied each of the motions.  Mercury Marine also objected to the jury instruction on the elements of a Texas design defect claim, offering the court two alternative instructions.  The court overruled its objections.  Mercury Marine appeals the denial of judgment as a matter of law and the jury instruction issue.

---

[1] Mercury Marine and Sea Ray are both divisions of Brunswick Corporation.

2

10-60095

## STANDARD OF REVIEW

This court reviews a motion for judgment as a matter of law *de novo*. *Cooper Indus., Inc. v. Tarmac Roofing Sys., Inc.*, 276 F.3d 704, 707 (5th Cir. 2002). Judgment as a matter of law is appropriate where "a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." FED. R. CIV. P. 50(a)(1). In reviewing the motion, the court must consider the evidence in the light most favorable to the non-movant and draw all reasonable inferences in his favor. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). When a party objects to a jury instruction before the district court, this court reviews the court's instruction for abuse of discretion. *Carrizales v. State Farm Lloyds*, 518 F.3d 343, 348 (5th Cir. 2008).

## DISCUSSION

### A.   Mercury Marine's Motion for Judgment as a Matter of Law

To recover on a design defect claim in Texas, "a plaintiff must prove that (1) the product was defectively designed so as to render it unreasonably dangerous; (2) a safer alternative design existed; and (3) the defect was a producing cause of the injury for which the plaintiff seeks recovery."[2] *Timpte Indus., Inc. v. Gish*, 286 S.W.3d 306, 311 (Tex. 2009). The first element comes from Texas common law; the second and third elements are statutory. *See* TEX. CIV. PRAC. & REM. CODE § 82.005(a) & (e); *Hernandez v. Tokai Corp.*, 2 S.W.3d 251, 256 (Tex. 1999). "The focus of a design defect claim . . . is whether there was a reasonable alternative design that, at a reasonable cost, would have reduced a foreseeable risk of harm." *Timpte*, 286 S.W.3d at 314.

---

[2] Mercury Marine does not dispute that Brochtrup established the third element.

3

10-60095

1.   *Whether the Product Was Defectively Designed so as to Render it Unreasonably Dangerous*

Mercury Marine argues that Brochtrup did not present sufficient evidence of the first element of a design defect claim: that the MerCruiser was defectively designed in a way that was unreasonably dangerous. Whether a product is "unreasonably dangerous" is generally a question of fact for a jury. *Hernandez*, 2 S.W.3d at 260 (holding that it "is often one that involves factual disputes that a party is entitled to have a jury resolve."). However, where a proposed alternative design "completely preclude[s] some of the uses for which the product was designed" the question can be resolved as a matter of law. *Id.* at 260–61. A court may also resolve the issue where the product's utility is "less severely impacted" but the evidence would not allow a jury to conclude that the product was unreasonably dangerous. *Id.*

After reviewing all of the evidence presented and drawing all reasonable inferences in Brochtrup's favor, the court concludes that a reasonable jury could find the MerCruiser to be unreasonably dangerous. First, Brochtrup presented evidence of the number and severity of propeller injuries. Second, his proposed alternative design did not adversely impact the MerCruiser's utility in all situations or "completely preclude some of the uses for which [it] was designed." *Id.* Third, experts testified that the alternative design was a safer overall design, was not excessively expensive, and was necessary to and would in fact eliminate these types of propeller injuries. Fourth, a former MerCruiser owner testified that he considered the exposed propeller to be dangerous and that he would have purchased a guard had one been available. When viewed in Brochtrup's favor, this evidence shows that judgment as a matter of law was not appropriate on this factual issue.

4

10-60095

Mercury Marine's arguments to the contrary are erroneous in two respects. First, it repeatedly asks this court to weigh the evidence presented, even though the proper inquiry is whether sufficient evidence existed to support Brochtrup's claim when the evidence is viewed in the light most favorable to Brochtrup. *Reeves*, 530 U.S. at 150. Second, it seeks to require Brochtrup to have presented what Mercury Marine believes to be the *best* evidence of all five risk-utility factors.[3] For example, Mercury Marine complains that Brochtrup did not present the percentage likelihood of injuries from an exposed propeller, public awareness of the danger presented by an exposed propeller, and the expectations of an ordinary consumer regarding an exposed propeller. The court will evaluate only whether the non-movant presented *sufficient* evidence; not whether he presented the most convincing evidence imaginable. Brochtrup's evidence on the first element of his design defect claim was sufficient.

2        *Whether a Safer Alternative Design Existed*

Mercury Marine also asserts that Brochtrup put forth insufficient evidence on the second element of a design defect claim: a safer alternative design. Specifically, Mercury Marine argues that Brochtrup failed to prove the economic feasibility of his design because he did not submit evidence of the cost—presumably to the manufacturer—of manufacturing labor, of attaching the

---

[3] Texas requires courts addressing the risk-utility of a product to consider: (1) the utility of the product to the user and the public weighed against the gravity and likelihood of injury from use; (2) the availability of a substitute product that is not unsafe or unreasonably expensive; (3) the manufacturer's ability to eliminate the unsafe elements without significantly decreasing usefulness or increasing cost; (4) the user's awareness of the product's danger and its avoidability because the danger is obvious or there are suitable warnings or instructions; and (5) consumer expectations. *Timpte*, 286 S.W.3d at 311.

alternative design to the existing product, and of making any necessary design changes to the existing product. The Texas Supreme Court has not addressed whether a plaintiff is required to present this evidence. In a diversity case where there is no controlling state decision, the court "must make an '*Erie* guess' as to how the Texas Supreme Court would apply state law." *Cerda v. 2004-EQR1 L.L.C.*, 612 F.3d 781, 794 (5th Cir. 2010) (internal quotation marks and citations omitted). In doing so, the court "defer[s] to intermediate state appellate court decisions, unless convinced by other persuasive data that the higher court of the state would decide otherwise." *Id.* (quotation marks and citations omitted).

In its most closely-related opinion, the Texas Supreme Court held that a plaintiff was not required to build and test a prototype of the alternative design to show *technological* feasibility,[4] but was merely required to prove that the alternative design was "capable of being developed." *Gen. Motors Corp. v. Sanchez*, 997 S.W.2d 584, 592 (Tex. 1999). The only Texas appellate court to directly address the evidence required to demonstrate *economic* feasibility held that a plaintiff need not "show the cost of implementing the alternative designs into the manufacturing process." *A.O. Smith Corp. v. Settlement Inv. Mgm't.*, No. 2-04-270-cv, 2006 WL 176815, at *3 (Tex. App.–Fort Worth Jan. 26, 2006, no pet.). It concluded that "[m]anufacturing costs may be one way to prove economic feasibility, but it is not the only way."[5] *Id.*

---

[4] Economic and technological feasibility are separate elements, each requiring separate proof. *Smith v. Aqua-Flo, Inc.*, 23 S.W.3d 473, 478 (Tex. App.–Houston 2000, pet. denied).

[5] The court also determined that, even if it had accepted the manufacturer's premise, expert testimony that "the cost to add [the alternative design to the product] would be 'quite a bit less' than $200 'in a manufacturing situation'" was sufficient for economic feasibility even

10-60095

In two decisions that preceded *A.O. Smith*, a different Texas appellate court implied that it might decide this issue differently. Both decisions, however, addressed a plaintiff who presented *no* evidence of the cost of an alternative design. *Honda of Am. Mfg., Inc. v. Norman*, 104 S.W.3d 600, 606–08 (Tex. App.–Houston 2003, pet. denied); *Smith*, 23 S.W.3d at 477–78. Unsurprisingly, the court found the evidence to be insufficient. *Smith*, 23 S.W.3d at 477–78; *Norman*, 104 S.W.3d at 606–08. It stated that "[t]o establish economic feasibility, the plaintiff must introduce proof of the 'cost of incorporating this technology,'" but in neither case did the court have occasion to explain what this language meant. *Norman*, 104 S.W.3d at 607 (quoting *Smith*, 23 S.W.3d at 478).

*A.O. Smith* is the only Texas appellate decision directly addressing the issue raised by Mercury Marine. It is therefore the only decision to which this court might "defer to" in making its "*Erie* guess." *Cerda*, 612 F.3d at 794. As noted above, the Texas Supreme Court's most relevant decision held that a plaintiff's evidence of feasibility need not be exhaustive in order to proceed to the jury. *See Sanchez*, 997 S.W.2d at 592. Third, were this court to follow *Smith* and *Norman*, it would still need to interpret, for the first time, the phrase "the cost of applying that technology to a particular design." It declines to do so.

At trial, Brochtrup relied on the testimony of Guy Taylor, the inventor and builder of Brochtrup's proposed alternative design. Taylor testified that the cost to him of building the propeller guard and shield was $150 for each item, plus an additional $100 if the owner chose to weld the guard and shield on to the

though the expert only evaluated proposed alternative designs and did not build a model. *A.O. Smith*, 2006 WL 176815, at *3–4.

7

10-60095

boat, for a total of $400.   This was sufficient evidence of the economic feasibility of Brochtrup's alternative design to avoid judgment as a matter of law.

**B.     Jury Instruction on a Texas Design Defect Claim**

"There are three requirements that must be met to successfully challenge a jury instruction." *RSR Corp.*, 426 F.3d at 290.   "First, the challenger must demonstrate that the charge as a whole creates substantial and ineradicable doubt whether the jury has been properly guided in its deliberations."   *Id.* (internal quotation marks omitted).   Second, even where an instruction is erroneous, the court will not reverse the verdict if it can determine, "based upon the entire record, that the challenged instruction could not have affected the outcome of the case."   *Id.*   Third, the challenger must show that the instruction that it contends should have been given was offered to the district court and was a correct statement of the law.   *Id.* at 290-91.

Mercury Marine has not met any of these requirements.   First, the instruction given was not incapable of properly guiding the jury.   It clearly set forth the first element of the design defect claim when it stated that "[a] 'design defect' is a condition of the product that renders it unreasonably dangerous as designed, taking into consideration the utility of the product and the risk involved in its use." *See, e.g.*, *Timpte*, 286 S.W.3d at 311.   Mercury Marine's argument faults this correct statement of relevant law simply because it was not set off with a "(1)" and placed at the end of the instruction.   In essence, Mercury Marine seeks reversal based on the district court's formatting decision. The jury was clearly and correctly instructed that a design defect is one that makes a product unreasonably dangerous based on the utility of the product and the risk involved.   "Great latitude is shown the trial court regarding jury instructions."

8

10-60095

*FDIC v. Wheat*, 970 F.2d 124, 130 (5th Cir. 1992).  The court should not presume that the jury disregarded this straightforward language simply because it was not set off by a "(1)".  *See United States v. Reedy*, 304 F.3d 358, 368 (5th Cir. 2002) ("Juries are presumed to follow instructions.").  Second, even were the court to assume that the instruction was erroneous, it can determine "based upon the entire record, that the challenged instruction could not have affected the outcome of the case."  *Id.*  "Perfection is not required as long as the instructions were generally correct and any error was harmless." *Taita Chem. Co. Ltd. v. Westlake Styrene, LP*, 351 F.3d 663, 667 (5th Cir. 2001).

## CONCLUSION

For these reasons, we AFFIRM the district court in all respects.

9