IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

No. 99-60772


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

CHRIS A. PRESTENBACH,

Defendant-Appellant.


Appeal from the United States District Court
For the Northern District of Mississippi


October 16, 2000

Before GARWOOD, HIGGINBOTHAM, and STEWART, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

On May 17, 1983, while serving time for a prior conviction, prison officials conducted a routine inspection of defendant Chris Prestenbach's personal property. They discovered that a lotion bottle in his possession contained a plastic bag with six Postal Service money orders inside. Four of the money orders had been altered.

Prestenbach was indicted and convicted of four counts of violating 18 U.S.C. § 494.[1] Each count had charged him with knowing

---

[1] 18 U.S.C. § 494 (1996) states:
    Whoever falsely makes, alters, forges, or counterfeits
    any bond, bid, proposal, contract, guarantee, security,
    official bond, public record, affidavit, or other writing
    for the purpose of defrauding the United States; or
    Whoever . . . [knowingly] possesses with intent to utter

possession with intent to utter and publish as true one of the altered money orders. The district judge sentenced him to five years for each violation, sentences to run consecutively. Prestenbach's direct appeal challenged the sufficiency of the evidence and an evidentiary ruling. This court affirmed the conviction without opinion in 1986.

He was released from state custody in 1993, and after the completion of his first sentence, he filed a motion under Federal Rule of Criminal Procedure 35(a)[2] to correct his sentence. He argued that his sentence punished him four times for a single offense. Since his first five-year term had been completed, he argued he should be released. The district court denied his motion.

Prestenbach appeals.

I

As a threshold matter, Prestenbach argues that the sentencing court lacked subject matter jurisdiction and therefore his conviction and sentence are invalid.[3] He argues that 18 U.S.C. §

_____

> or publish as true, any such false, forged, altered, or counterfeited writing . . .
> Shall be . . . imprisoned not more than ten years.

[2] FED. R. CRIM. P. 35(a) (1984) ("The court may correct an illegal sentence at any time."). Defendant's offense occurred before the effective date of the current version of the rule. *See* FED. R. CRIM. P. 35(a) (2000).

[3] He raises the subject matter jurisdiction argument for the first time in his reply brief, but, of course, this court may always raise the question of subject matter jurisdiction on appeal and in the courts below. *See, e.g., United States v. Santora*, 711 F.2d 41, 42 (5th Cir. 1983); *Goldin v. Bartholow*, 166 F.3d 710, 714

494 does not prohibit possession of altered postal money orders, and thus his indictment failed to state a claim.

We cannot revisit his conviction. Under Rule 35(a), a defendant cannot challenge his conviction; he can only challenge his sentence.[4] Further, this court cannot construe his Rule 35(a) appeal as a 28 U.S.C. § 2255 motion[5] because the one-year statute of limitations on filing a federal habeas petition expired years ago.[6]

Focusing then on the court's jurisdiction to sentence, we rule that subject matter jurisdiction did exist. Defendant's indictment alleged violations of 18 U.S.C. § 494, clearly a federal question. The indictment alleges every element of the crime. That Prestenbach's alleged acts do not violate section 494 goes to the merits of the case, not jurisdiction. This alleged error should be

---

(5th Cir. 1999).

[4] *See, e.g., United States v. Scott*, 688 F.2d 368, 369-70 (5th Cir. 1982).

[5] *See, e.g., United States v. Stumpf*, 900 F.2d 842, 844 (5th Cir. 1990); *Santora*, 711 F.2d at 42.

[6] The effective date of the AEDPA was April 24, 1996; the statute of limitations expires one year after that date or the date the defendant's conviction becomes final, whichever is later. *See United States v. Flores*, 135 F.3d 1000, 1004-05 (5th Cir. 1998) (allowing more than a year after the effective date of the AEDPA if "reasonable"), *cert. denied*, 525 U.S. 1091 (1999).

addressed as a failure to state a claim, not as a jurisdictional defect.[7] We now address the merits of Prestenbach's claim.[8]

## II

Prestenbach contends that he is guilty of only a single act of possessing four altered money orders, and thus his consecutive sentences punish him four times for a single crime. We must determine the "unit of prosecution" Congress created—the act of possessing money orders, or the act of possessing a single money order.[9] As there is no precedent directly on point, we interpret the text with the aid of analogous cases.

The statutory language is ambiguous. It prohibits possession of "any such . . . writing." Although the government argues that

---

[7] *See Congress of Racial Equality v. Clemmons*, 323 F.2d 54, 59 (5th Cir. 1963) ("A distinction must be drawn between the question of federal jurisdiction and the question of sufficiency of the complaint . . . to show a cause of action arising under [federal law]. . . . [T]he complaint in this case, as drafted, states an action created or arising under [federal statutes]. The district court therefore had jurisdiction, even if the case should be dismissed for failure of the plaintiffs to show a cause of action under the federal statutes.").

[8] Our interpretation of 18 U.S.C. § 494 thus assumes the conviction was proper. However, we do not decide whether Prestenbach's conviction under 18 U.S.C. § 494 rather than 18 U.S.C. § 500 was valid.

[9] Note that Prestenbach challenges multiple sentences, not successive prosecutions. Thus, the issue in this case is merely legislative intent; the Constitution does not prevent Congress from making possession of each altered money order a separate offense. "With respect to cumulative sentences imposed in a single trial, the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended." *Missouri v. Hunter*, 459 U.S. 359, 366 (1983).

4

"any" indicates each writing comprises the unit of prosecution,[10] courts have not so held. In *Bell v. United States*[11] the Supreme Court interpreted the Mann Act, which prohibited "knowingly transport[ing] in interstate or foreign commerce . . . any woman or girl for the purpose of prostitution or debauchery, or for any other immoral purpose,"[12] to allow only one conviction for the simultaneous transportation of two women. The Court noted that, lacking explicit instructions from Congress, it would treat each transportation as the unit of prosecution.[13]

---

[10] The government cites cases such as *United States v. Windom*, 510 F.2d 989 (5th Cir. 1975), *interpreting* 18 U.S.C. § 495 (uttering or publishing "any" forged writing), and *United States v. Guzman*, 781 F.2d 428 (5th Cir. 1986) (per curiam), *interpreting* 18 U.S.C. § 1001 (making "any" materially false representation).

[11] 349 U.S. 81 (1955).

[12] *Id.* at 82, *quoting* 18 U.S.C. § 2421.

[13] In the same spirit of *Bell* is *United States v. Driscoll*, 454 F.2d 792, 801 (5th Cir. 1972), holding that the passing of six fraudulent checks on three occasions amounted to only three violations of a statute prohibiting interstate transport of fraudulent checks. The statute at issue, 18 U.S.C. § 2314, prohibited transportation of "any" forged traveler's check. *See also United States v. Berry*, 977 F.2d 915, 918-20 (5th Cir. 1992) (construing 18 U.S.C. § 922(g), which prohibits possession of "any firearm or ammunition" by certain individuals); *United States v. Hodges*, 628 F.2d 350, 351 (5th Cir. 1980) (construing 18 U.S.C. § 922(h) and 18 U.S.C. App. § 1202 (now 18 U.S.C. §§ 922(g) & (n)), which prohibit possession or receipt of "any firearm or ammunition" by certain individuals); *United States v. Edmonson*, 659 F.2d 549 (5th Cir. Unit A 1981) (construing 18 U.S.C. § 1708, which forbids theft or possession of "any letter"); *Williams v. United States*, 385 F.2d 46 (5th Cir. 1967) (per curiam) (same).

Since "any" can mean "one" or "some,"[14] courts have determined the unit of prosecution by reference to the conduct alleged. Courts apply the following rule: "Whether a transaction results in the commission of one or more offenses is determined by whether separate and distinct acts made punishable by law have been committed."[15] The principle underlying this rule is that the "unit of prosecution" for a crime is the *actus reus*, the physical conduct of the defendant.

While identifying the *actus reus* with particularity may not always be easy, our cases have been able to do so in a coherent fashion. If the statute prohibits uttering false statements or stealing mail, courts treat each utterance or theft as a single offense. Thus, fraudulently endorsing eight checks at one time constitutes eight violations of 18 U.S.C § 495.[16] Submitting two documents with false statements at the same time supports two

---

[14] One dictionary defines "any" as "one, a, an, or some; one or more without specification or identification." RANDOM HOUSE COLLEGE DICTIONARY (rev. ed. 1982).

[15] *Guzman*, 781 F.2d at 432. *Guzman* found that the offenses alleged were separate; *Williams*, 385 F.2d at 47, stated the same rule and found only a single offense.

[16] *See United States v. Windom*, 510 F.2d 989, 994-95 (5th Cir. 1975).

convictions.[17] However, stealing a single bag of mail with sixteen pieces of mail in it is only a single offense.[18]

Cases interpreting statutes criminalizing possession of firearms or stolen mail follow the same logic. If the contraband is possessed at a single place and time, there is a single act of possession and a single crime.[19] Possession of multiple pieces of stolen mail that were stolen at the same time gives rise to only a single offense.[20] The "simultaneous, undifferentiated possession of multiple firearms constitutes only one offense" under statutes forbidding convicted felons from possessing or receiving firearms.[21] Consistent with the principle that the *actus reus* defines the unit of prosecution, the cases involving firearms acknowledge that receipt or possession of different guns at different times could give rise to separate offenses, with consecutive sentences.[22]

---

[17] *See Guzman*, 781 F.2d at 432-33; *United States v. Shaid*, 730 F.2d 225, 231 (5th Cir. 1984). *But cf. Driscoll*, 454 F.2d at 801 (holding that the passing of six fraudulent checks on three occasions amounted to only three violations of a statute prohibiting interstate transport of fraudulent checks).

[18] *See Williams*, 385 F.2d at 47.

[19] Consider the alternative: a person knowingly receives a bag of five thousand counterfeit $10 bills. *See* 18 U.S.C. § 473 (2000). Five thousand counts of receiving counterfeit obligations?

[20] *See Edmonson*, 659 F.2d at 550; *Williams*, 385 F.2d at 47.

[21] *Hodges*, 628 F.2d at 351. *See also Berry*, 977 F.2d at 919.

[22] *Berry*, 977 F.2d at 920; *Hodges*, 628 F.2d at 352.

Turning to the facts of this case, we find that the government alleged only a single act of possession. As noted above, whether a transaction results in the commission of one or more offenses is determined by whether separate and distinct acts made punishable by law have been committed. Keeping four altered money orders in a lotion bottle is one action, and therefore one crime.[23]

If the government proved separate acts leading to his possession of the altered money orders, it might present this court with a different case;[24] but it did not. Nor did the government allege any acts of alteration by the defendant. Therefore, we REVERSE the district court's denial of defendant's motion to correct his sentence and INSTRUCT the district court to reduce the three illegal sentences and grant any additional appropriate relief, including Prestenbach's release.

Sentence VACATED and REMANDED.

---

[23] Finally, we note that any uncertainty that remains would be insufficient to undermine this holding. If uncertainty remains after our interpretation of the text and its underlying policies, the rule of lenity requires a narrow construction of the law. *See Bell*, 349 U.S. at 83 ("When Congress leaves to the Judiciary the task of imputing to Congress an undeclared will, the ambiguity should be resolved in favor of lenity."); *Moskal v. United States*, 498 U.S. 103, 108 (1990) ("[W]e have always reserved lenity for those situations in which a reasonable doubt persists about a statute's intended scope even after resort to the language and structure, legislative history, and motivating policies of the statute.") (quotation marks and emphasis omitted). There is no relevant legislative history.

[24] *See Berry*, 977 F.2d at 920; *Hodges*, 628 F.2d at 352.