United States Court of Appeals
Fifth Circuit

**F I L E D**

**July 19, 2007**

Charles R. Fulbruge III
Clerk

UNITED STATES COURT OF APPEALS
FIFTH CIRCUIT

———————————————

No. 05-21040

———————————————

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

JOHN ANTHONY PLANCK,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Southern District of Texas
(4:05-CR-206)

_____

Before JONES, Chief Judge, and WIENER and BARKSDALE, Circuit Judges.

RHESA HAWKINS BARKSDALE, Circuit Judge:

For his seven guilty-plea convictions concerning child pornography, John Anthony Planck challenges only his three possession convictions, contending the underlying counts are multiplicitious. Regarding his sentence, he challenges the imposition of a life term of supervised release. **AFFIRMED.**

I.

In 2003, United States Immigration and Customs Enforcement Agents were engaged in an online child-pornography investigation. Planck was identified as a computer user responsible for uploading child pornographic images onto a Government-monitored website. In August 2004, a search warrant was executed at his residence; a desktop computer, laptop computer, and 223 computer diskettes were seized.

The desktop computer contained 88 videos and still child-pornography photographs; the laptop computer, four still photographs; and the diskettes, thousands of images. In total, Planck's computer data contained approximately 5,000 child-pornography images.

Planck was charged with four counts of distribution of child pornography, in violation of 18 U.S.C. §§ 2252A(a)(2)(B), 2252A(b)(1), and 2256; and three counts of possession of child pornography, in violation of 18 U.S.C. §§ 2252A(a)(5)(B), 2252A(b)(2), and 2256. The possession counts were based on his having child pornography on his two computers and diskettes.

Planck moved to dismiss two of the possession counts on multiplicity grounds, contending he was being prosecuted three times for the same possession-of-child-pornography act. The Government responded that, although the counts arose under the same statutory provision, the device involved in each count (desktop

2

computer, laptop computer, and diskettes), and the images in each of those devices, differed.

The district court denied Planck's motion. In August 2005, he pleaded guilty to all seven counts.

The November 2005 Presentence Investigation Report (PSR) recommended a base offense level of 32, based on the post-*Booker* advisory 2003 Sentencing Guidelines. The recommended advisory Guidelines range was 121 to 151 months imprisonment. Noting the Guidelines suggested a two to three year term, the PSR instead recommended the statutory maximum of a life term, for supervised release, pursuant to Guidelines § 5D1.2(c) (term of statutory release should not be less than any statutorily required minimum). Planck did *not* object to that recommendation.

In December 2005, adopting the recommendations in the PSR, the district court sentenced Planck, *inter alia*, to 121-months imprisonment on the distribution counts and 120-months on the possession counts, to be served concurrently. The court also imposed a life term of supervised release, in accordance with § 5D1.2(c). After imposition of sentence, Planck again objected to the possession counts on multiplicity grounds; he again did *not* object to the supervised release.

II.

A.

Planck first contends two of the three possession counts are multiplicitious and should be dismissed. Multiplicity claims are reviewed *de novo*. *United States v. Brechtel*, 997 F.2d 1108, 1112 (5th Cir. 1993). The rule against multiplicitous prosecutions stems from the Fifth Amendment's proscription against double jeopardy. *E.g., United States v. Kimbrough*, 69 F.3d 723, 729 (5th Cir. 1995). The rule prevents the Government from charging a single offense in more than one count of an indictment. *United States v. Heath*, 970 F.2d 1397, 1401 (5th Cir. 1992). "The chief danger raised by a multiplicitous indictment is the possibility that the defendant will receive more than one sentence for a single offense." *United States v. Swaim*, 757 F.2d 1530, 1537 (5th Cir. 1985).

In deciding whether an indictment is multiplicitious, we look to "whether separate and distinct prohibited acts, made punishable by law, have been committed". *United States v. Shaid*, 730 F.2d 225, 231 (5th Cir. 1984) (quoting *Bins v. United States*, 331 F.2d 390, 393 (5th Cir. 1964)). To do so, we must first determine the "allowable unit of prosecution", *see United States v. Reedy*, 304 F.3d 358, 365 (5th Cir. 2002) (quoting *United States v. Universal C.I.T. Credit Corp.*, 344 U.S. 218, 221 (1952)), which is the *actus*

4

*reus* of the defendant, **United States v. Prestenbach**, 230 F.3d 780, 783 (5th Cir. 2000).

The issue at hand is a matter of first impression for our court. Therefore, we look to our precedent in analogous cases to guide our analysis. Section 2252A(a)(5)(B) proscribes "knowingly possess[ing] any book, magazine, periodical, film, videotape, computer disk, or any other material that contains an image of child pornography ...." Plank contends: despite the possession of child pornography in three different *types* of devices, his acts still constituted only a single violation of § 2252A(a)(5)(B), because he was found in possession of the images at the same time and place.

In support, Planck cites **Prestenbach**. There, the defendant was convicted on four counts for possessing four altered money orders in a bottle, in violation of 18 U.S.C. § 494, which made it a crime to "[knowingly] possess ... any such false, forged, altered, or counterfeited writing". In **Prestenbach**, only a single act of possession was alleged. 230 F.3d at 783.

Our court reversed the conviction, holding: where "contraband is possessed at a single place and time, there is a single act of possession and a single crime". *Id.* "Keeping four altered money orders in a ... bottle is one action, and therefore one crime." *Id.* at 784. Notably, however, **Prestenbach** also stated: had "the

5

government proved separate acts leading to ... possession of the altered money orders, it [would be] ... a different case". *Id.*

Statutes punishing the possession of firearms by felons lend similar support. Although 18 U.S.C. § 922(h) punishes the "possess[ion]" or "recei[pt]" of "any firearm or ammunition" traveling through interstate commerce, the "firearms themselves [are not] allowable units of prosecution, *unless* they were received at *different* times or *stored* in separate places". **United States v. Hodges**, 628 F.2d 350, 352 (5th Cir. 1980) (emphasis added); *see also* **United States v. Berry**, 977 F.2d 915, 920 (5th Cir. 1992) (simultaneous possession of firearms and ammunition can sustain multiple violations of 18 U.S.C. § 922 if firearms were obtained at different times or stored in separate places). Congress chose *not* to punish the "*undifferentiated* possession or receipt of *multiple* firearms ... more severely than the possession or receipt of a *single* firearm". **Hodges**, 628 F.2d at 352 (emphasis added). But again, a defendant could be charged with multiple violations of the statute for receipt or possession of different firearms at different times. **United States v. Bullock**, 615 F.2d 1082, 1085-86 (5th Cir. 1980).

"Where a defendant has a single envelope or book or magazine containing many images of minors engaging in sexual activity, the government often should charge only a single count." **Reedy**, 304 F.3d at 367. Here, however, the desktop, laptop, and diskettes

6

Planck possessed were three separate types of material or media, each capable of independently storing images of child pornography. Along that line, where a defendant has images stored in separate materials (as defined in 18 U.S.C. § 2252A), such as a computer, a book, and a magazine, the Government may charge multiple counts, each for the type of material or media possessed, as long as the prohibited images were obtained through the result of different transactions.

A contrary result would allow amassing a warehouse of child pornographic material — books, movies, computer images — with only a single count of possession as a potential punishment. As **Bullock** noted, when discussing the firearms statute:

> [C]ould Congress have intended to deter receipt as well as possession of firearms by convicted felons and yet design the statute to only allow one punishment no matter how many separate receipts and possessions occurred? We think not. Any other determination would allow convicted felons and terrorists to establish armories where all of their weapons would be kept. The person in custody of the armory would then be subject to only a single charge of possession, although thousands of illegal and dangerous weapons were received and stockpiled at different times.

**Bullock**, 615 F.2d at 1086.

Recently, in **United States v. Buchanan**, 485 F.3d 274 (5th Cir. 2007), our court reversed a multiplicitous conviction under 18 U.S.C. § 2252(a)(2), which proscribes, *inter alia*, the receipt of child pornography. Buchanan was convicted, following a jury trial,

on four separate counts, for having accessed and saved to his computer four different child pornographic images. *Id.* at 277-78. Our court held the Government "bore the burden of establishing multiple counts by charging and proving separate receipts" of the contraband material; it failed to meet its burden by not "alleg[ing] separate receipt of the four images identified". *Id.* at 282. *Buchanan* is, of course, distinguishable; in a receipt/distribution statute, such as 18 U.S.C. § 2252(a)(2), each separate receipt of child pornography violates the statute. *Id.* at 279-82; *cf*. *United States  v. Gallardo*, 915 F.2d 149, 151 (5th Cir. 1990) (each separate use of the mail to transport or ship child pornography should constitute a separate crime).

For the possession statute in issue, however, the *actus reus* is the possession of child pornography; the Government need only prove the defendant possessed the contraband at a single place and time to establish a single act of possession and, therefore, a single crime. *Prestenbach*, 230 F.3d at 783. Through different transactions, Planck possessed child pornography in three separate places — a laptop and desktop computer and diskettes — and, therefore, committed three separate crimes. The counts are not multiplicitous.

In contesting his life term of supervised release, Planck concedes he did *not* object to that term in district court. Therefore, we review only for plain error. FED. R. CRIM. P. 52(b). To establish reversible plain error, a defendant must show a clear or obvious error affected his substantial rights. *E.g., **United States v. Castillo***, 386 F.3d 632, 636 (5th Cir. 2004). Even if the defendant does so, we retain discretion to correct the plain error; generally, we will do so only if it "affects the fairness, integrity, or public reputation of judicial proceedings". **Id.** There is no reversible plain error.

The policy statement in Guidelines § 5D1.2 recommends a maximum term of supervised release for sex offenders who are convicted under Chapter 110 of the United States Code (Sexual Exploitation and Abuse of Children), particularly those who commit crimes "perpetrated against minors". U.S.S.G. § 5D1.2(c) & cmt. n.1 (2003). Read in conjunction with statutory provisions governing supervised release, district courts are authorized to impose a life term of supervised release on sex offenders, particularly those who commit crimes against minors. **United States v. Allison**, 447 F.3d 402, 405 (5th Cir. 2006).

Planck first claims his offense does not qualify under § 5D1.2(a)(2), asserting that consuming and distributing, unlike manufacturing, child pornography is not a crime perpetrated against

a minor.  In that regard, he further claims:  had the drafters of the Guidelines intended for all sex offenses under Chapter 110 to be encapsulated within § 5D1, they would have omitted the qualifier "perpetrated against a minor".

Possession and distribution of child pornography are crimes perpetrated against a minor.  As this court has stated previously, a child may be victimized in three distinct ways:

> First, the simple fact that the images have been disseminated perpetuates the abuse initiated by the producer of the materials .... Second, the mere existence of child pornography represents an invasion of privacy of the child depicted.  Both the Supreme Court and Congress have explicitly acknowledged that the child victims of child pornography are directly harmed by this despicable intrusion on the lives of the young and the innocent .... Third, the consumer of child pornography instigates the original production of child pornography by providing an economic motive for creating and distributing the materials.

*United States v. Norris*, 159 F.3d 926, 929–30 (5th Cir. 1998) (internal citations, quotation marks, and emphasis omitted).

Under the advisory-Guidelines regime imposed by *United States v. Booker*, 543 U.S. 220 (2005), a district court must still consider the sentencing considerations provided in 18 U.S.C. § 3553(a).  *E.g., United States v. Smith*, 440 F.3d 704, 706 (5th Cir. 2006).  In the alternative, Planck claims:  even if he qualified for an upward departure, it was not warranted because his case was not outside the heartland of a typical case.

10

In imposing the supervised release, the district court stated it was intended to "serve as a deterrent [for the defendant] from continued elicit [sic] behavior involving sexual conduct of minors and/or the possession of child pornographic materials that would address the need to protect the public from further crimes of this defendant". These stated reasons are consistent with the sentencing factors in § 3553(a). *See* 18 U.S.C. § 3553(a)(2)(B, C) ("deterrence" and "protect[ing] the public from further crimes of the defendant" as sentencing factors). Furthermore, because of the seriousness of the offense, we have previously upheld life terms of supervised release against sex offenses perpetrated against minors. *See* **Allison**, 447 F.3d at 407 ("[T]he decision to departure upward ... [is] consistent with Congress's and the Sentencing Commission's intention to punish child sex offenders with life terms of supervised release".).

### III.

For the foregoing reasons, the judgment is

*AFFIRMED.*

WIENER, Circuit Judge, specially concurring:

I am comfortable with the majority's disposition of the issue of Planck's term of supervised release. I add this special concurrence, however, to expand on the multiplicity issue.

I agree with the majority that, in prosecutions for possession offenses, the <u>actus reus</u> is the defendant's act of possession, in consequence of which a defendant who possesses multiple items of contraband <u>at the same time and place</u> may be convicted of only one possession offense, just as a defendant who possesses a single item of contraband may be convicted of only one offense. I also agree with the majority's recognition of an exception to this general rule: A defendant who possesses multiple items of contraband at the same time and place, may nevertheless be convicted of multiple possession offenses if he either (1) came into possession of different items of contraband at different times or (2), as the government contends here, stored some of the items in different places.[1]

---

[1] Although the desktop computer was found in Planck's living room, the laptop computer in his dining room, and the diskettes in his bedroom, all were stored in his house at the same time. Under these facts, it is feckless to contend that these items were stored in different places. Possession of all items within Planck's home was storage in the same place.

In this prosecution, the government failed to adduce any evidence or assert any facts through the factual basis, rearraignment hearing, sentencing hearing, pre-sentence investigation report, or indictment, that Planck acquired possession of any of the pornographic images and movies at different times. Even though such an omission could be fatal to a prosecution under different circumstances, it is not here: Given the overwhelming number of images and movies stored on the computers and diskettes in Planck's house, it would exceed credulity to conclude that Planck acquired, or could have acquired, all the images and movies at the very same time. In this guilty-plea case, the district court did not clearly err in implicitly finding that, based on and supported by the evidence actually presented, Planck must have acquired possession of the images and movies at different times. Under the discrete facts of this case, I must concur in the majority's conclusion that convictions on Counts 5 through 7 — the possession counts — are not multiplicitous.

I remain troubled, however, by the government's failure to present any affirmative evidence or assert any discrete facts to support the requirement of Planck's having acquired the images and movies at more than one time. It could not have been difficult for the government to ascertain when Planck downloaded each of the images and movies, especially in light of the government's ability to perform the more difficult task of tracing the upload of images by Planck, a

resident of Kingwood, Texas, to an online sharing community operating in Newark, New Jersey.

I am even more disturbed by the government's and probation office's apparent failure to recognize the law in this circuit concerning multiple possession offenses in general. Even though this case is, in the narrowest sense, one of first impression under this statute and these discrete facts, it remains a contraband possession case at its core. Yet at no time, either in the district court or on appeal, has the government or probation office acknowledged, recognized, or represented that the only way to support multiple possession charges against a defendant in Planck's position is to allege and prove that he either acquired possession of the images and movies at different times or stored them in different places. Here, the government either failed to determine the applicable law before prosecuting Planck or simply disregarded it.

Had the facts of this case been but slightly different, the result might well have been different too. And, although the only thing at stake in this particular multiplicity issue is a $200.00 special assessment fee, it would have been a miscarriage if we had been left no choice but to reverse all but one of these convictions of an admitted child pornographer simply because the government failed either to learn the law or to present the necessary factual underpinnings. A word (actually, quite a few words) to the wise should be sufficient.

14