# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2017-KA-00884-COA

**CAMERON DWAYNE MAY A/K/A CAMERON**          **APPELLANT**
**D. MAY A/K/A CAMERON MAY**

**v.**

**STATE OF MISSISSIPPI**          **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 03/24/2017 |
| TRIAL JUDGE: | HON. DALE HARKEY |
| COURT FROM WHICH APPEALED: | JACKSON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: GEORGE T. HOLMES |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: JOSEPH SCOTT HEMLEBEN |
| DISTRICT ATTORNEY: | ANTHONY N. LAWRENCE III |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED IN PART; REVERSED AND RENDERED IN PART - 12/11/2018 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE IRVING, P.J., GREENLEE AND TINDELL, JJ.**

**GREENLEE, J., FOR THE COURT:**

¶1. Cameron May challenges his convictions for two counts of aggravated assault (Counts I and II), one count of sexual battery (Count III), and one count of kidnapping (Count IV). The Jackson County Circuit Court sentenced him to serve twenty years for Count I, twenty years for Count II, thirty years for Count III, and thirty years for Count IV. His sentences for Counts II, III, and IV are to run concurrently with each other, but consecutively to Count I, all in the custody of the Mississippi Department of Corrections. May appeals.

¶2. On appeal, he alleges that: (1) double jeopardy bars his two aggravated-assault

convictions; (2) evidence is insufficient to sustain his sexual-battery conviction; (3) evidence is insufficient to sustain his kidnapping conviction; and (4) the circuit court erred when it denied his motion to suppress his statement to the police. Finding error, we affirm in part and reverse and render in part.

## FACTS AND PROCEDURAL HISTORY

¶3. May scoured Ocean Springs for a victim. In the hapless Barbara Jalanivich, he found one. After feigning interest in a rental at the apartment complex where Jalanivich worked, May closed Jalanivich's office door, blocked her exit, and then beat and strangled her until she lost consciousness. When she came to, her undergarments and shoes were removed, and the door to her office was locked. She immediately sought help from complex residents; they called the police and Jalanivich's relatives.

¶4. Police questioned Jalanivich, and she told them and her father that she may have been raped. They then took her to the hospital. There, nurses documented her injuries and performed a sexual-assault examination, documenting Jalanivich's vaginal redness and deep bruising inside her vagina.

¶5. May fled to Florida, where police officers arrested him. During questioning, May admitted to having battered and strangled Jalanivich, but he denied having sexual intercourse with her. When he invoked his right to counsel, the police officers stopped the interview.

¶6. In March 2017, a jury convicted May for two counts for aggravated assault (Counts I and II), one count for sexual battery (Count III), and one count for kidnapping (Count IV). The Jackson County Circuit Court then sentenced him to serve twenty years for Count I,

2

twenty years for Count II, thirty years for Count III, and thirty years for Count IV. Counts II, III, and IV were to run concurrently with each other, but consecutively to Count I, all in the custody of the Mississippi Department of Corrections.

¶7.    May filed a motion for a judgment notwithstanding the verdict (JNOV) or, in the alternative, a new trial, which the circuit court denied. He appeals, asserting that: (1) double jeopardy bars his two aggravated-assault convictions; (2) evidence is insufficient to sustain his sexual-battery conviction; (3) evidence is insufficient to sustain his kidnapping conviction; and (4) the circuit court erred when it denied his motion to suppress his statement to the police.

## DISCUSSION

### I.    Does double jeopardy bar May's two aggravated-assault convictions?

¶8.    "We apply a *de novo* standard of review to claims of double jeopardy." *Kelly v. State*, 80 So. 3d 802, 804 (¶8) (Miss. 2012) (quoting *Boyd v. State*, 977 So. 2d 329, 334 (¶14) (Miss. 2008)).

¶9.    May asserts that his right under the Fifth Amendment not to be twice put in jeopardy for the same offense is violated by the two aggravated-assault convictions.[1] He first raised this issue before trial and continues to raise it on appeal.

¶10.    The Double Jeopardy Clause of the Fifth Amendment provides: "[N]or shall any person be subject for the same offence to be twice put in jeopardy of life or limb . . . ." U.S.

---

[1] The federal Constitution's prohibition of double jeopardy applies to the states through the Fourteenth Amendment. *Benton v. Maryland*, 395 U.S. 784, 794 (1969).

3

Const. amend. V; *see also* Miss. Const. art. 3, § 22 ("No person's life or liberty shall be twice placed in jeopardy for the same offense; but there must be an actual acquittal or conviction on the merits to bar another prosecution.").[2]

¶11.    The State asks us to look to the *Blockburger* (or "same-elements") test in determining May's double-jeopardy claim. In *Blockburger*, the United States Supreme Court held that "where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." *Blockburger v. United States*, 284 U.S. 299, 304 (1932). The State argues that May's two convictions do not stem from the same act. Rather, the State purports they stem from two different ones: (1) May beating Jalanivich; and (2) May strangling Jalanivich.

¶12.    The jury instructions mirror the stated assertion. The instruction for Count I asked the jury to find May guilty if he "willfully, unlawfully and feloniously cause[d] serious bodily injury, to-wit: causing a mandible fracture, pterygoid fracture and biltateral intraparenchymal subarchnoid hemorrhages" to "Jalanivich by striking her face and head . . . ." The instruction for Count II asked the jury to find May guilty if he "willfully, unlawfully and feloniously cause[d] bodily injury, to-wit: causing unconsciousness and injury to the neck" to "Jalanivich by a means likely to produce death or serious bodily harm . . . ."

¶13.    May advocates that we, instead, embrace the "unit of prosecution" concept detailed

---

[2] Justice Rehnquist described double jeopardy as "a veritable Sargasso Sea which could not fail to challenge the most intrepid judicial navigator." *Albernaz v. United States*, 450 U.S. 333, 343 (1981).

in *Sanabria v. United States*, 437 U.S. 54, 69 (1978), despite the fact—and May acknowledges this—that "[t]here is no Mississippi case directly on point applying the unit of prosecution analysis to our aggravated assault statue."

¶14. Our state supreme court has noted that "an overt act toward the commission of one crime can constitute a separate independent crime." *Greenwood v. State*, 744 So. 2d 767, 771 (¶20) (Miss. 1999). However, May has two convictions under one statute—Mississippi Code Annotated section 97-3-7(2)(a) (Rev. 2014)—arising out of the same occurrence: his attack on Jalanivich. The State broke the assault down into two phases, the beating and the strangling, charging each under the same statute. But May's striking and strangling of Jalanivich was during the same assault. "Whether a transaction results in the commission of one or more offenses is determined by whether separate and distinct acts made punishable by law have been committed." *United States v. Prestenbach*, 230 F.3d 780, 783 (5th Cir. 2000).

¶15. Aggravated assault is defined in section 97-3-7(2)(a) of the Mississippi Code Annotated:

> A person is guilty of aggravated assault if he (i) attempts to cause serious bodily injury to another, or causes such injury purposely, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life; (ii) attempts to cause or purposely or knowingly causes bodily injury to another with a deadly weapon or other means likely to produce death or serious bodily harm . . . .

Miss. Code Ann. § 97-3-7(2)(a).

¶16. "It is bedrock law in Mississippi that criminal statutes are to be strictly construed against the State and liberally in favor of the accused." *Coleman v. State*, 947 So. 2d 878, 881

5

(¶10) (Miss. 2006). The State has attempted to divide the attack, the aggravated assault, into more than one incident. The evidence shows there was one attack to harm her. To utilize the State's logic, a third crime would have been committed if May kicked Jalanivich during the attack.

¶17.     Notably, some jurisdictions have approached this area of law with a definite test. Kansas has a differentiated approach to the issue:

> In analyzing a double jeopardy issue, the overarching inquiry is whether the convictions are for the same offense. There are two components to this inquiry, both of which must be met for there to be a double jeopardy violation: (1) Do the convictions arise from the same conduct? and (2) By statutory definition are there two offenses or only one? Under the first component, if the conduct is discrete, i.e., committed separately and severally, the convictions do not arise from the same offense and there is no double jeopardy violation. If the charges arise from the same act or transaction, the conduct is unitary and the second component must be analyzed to see if the convictions arise from the same offense. Under the second component, it must be determined whether the convictions arise from a single statute or from multiple statutes. If the double jeopardy issue arises from convictions for multiple violations of a single statute the unit of prosecution test is applied. If the double jeopardy issue arises from multiple convictions of different statutes, in other words it is a multiple description issue, the same-elements test is applied.

*State v. Schoonover*, 133 P.3d 48, 55 (Kan. 2006). Here, the Kansas Supreme Court helpfully adopted the "unit of prosecution" test, explaining it is "not necessarily dependent upon whether there is a single physical action . . . ; [r]ather, the key is the nature of the conduct proscribed." *Id.* at 65.

¶18.     We note that such certainty is lacking in Mississippi, but in the present case, evidence shows that May committed one attack to harm Jalanivich. His actions were not each a discrete and separate act but a part of May's single attack on Jalanivich, i.e., one aggravated

assault. Even though the statute for aggravated assault has two methods of proof for the one occurrence, May was not charged under a separate statute with differing elements of proof. Therefore, the same-elements test is inapplicable. Because statutes are to be strictly construed against the State, the two methods of proof are to be construed as describing one aggravated assault in this case.

¶19. Thus, the right to protection from double jeopardy precludes the second conviction, and because the jury found May guilty of Count I, we vacate May's Count II conviction and sentence.

## II. Is evidence sufficient to sustain May's sexual battery conviction?

¶20. "In considering whether the evidence is sufficient to sustain a conviction, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Roberts v. State*, 229 So. 3d 1060, 1066-67 (¶21) (Miss. Ct. App. 2017) (internal quotation marks omitted) (quoting *Bush v. State*, 895 So. 2d 836, 843 (¶16) (Miss. 2005), *overruled on other grounds by Little v. State*, 233 So. 3d 288, 289 (Miss. 2017)). We will reverse and render a conviction "if facts and inferences considered by the Court point in favor of the defendant on any element of the offense with sufficient force that reasonable men could not have found beyond a reasonable doubt that the defendant was guilty." *Powell v. State*, 249 So. 3d 355, 361 (¶35) (Miss. 2018) (quoting *Edwards v. State*, 469 So. 2d 68, 70 (Miss. 1985)).

¶21. The Mississippi Code governs sexual battery: "A person is guilty of sexual battery if

7

he or she engages in sexual penetration with: . . . (b) A mentally defective, mentally incapacitated or physically helpless person . . . ." Miss. Code Ann. § 97-3-95(1)(b) (Rev. 2014). At trial, the circuit court gave the jury the following instruction:

> If you find from the evidence in this case beyond a reasonable doubt and to the exclusion of every reasonable hypothesis consistent with innocence that:
>
> 1. on or about September 10, 2015, in Jackson County, Mississippi;
>
> 2. the Defendant, Cameron Dwayne May, did willfully, unlawfully and feloniously engage in sexual penetration with Barbara Jalanivich; and
>
> 3. Barbara Jalanivich was a physically helpless person at the time of said act[,]
>
> then you shall find the defendant guilty of the crime of Count III Sexual Battery.

¶22.    The contended issue is not whether Jalanivich was physically helpless; she testified that May had beat and strangled her until she passed out, and unconsciousness is consistent with the statutory definition of a "physically helpless person." Miss. Code Ann. § 97-3-97(d) (Rev. 2014). Rather, May's contention focuses on sexual penetration. He asserts that because Jalanivich never testified that she was sexually assaulted and because the State never presented medical proof showing that Jalanivich's vaginal trauma was the result of illegal penetration, the evidence is not sufficient to sustain his sexual-battery conviction.

¶23.    In Mississippi, sexual penetration "includes cunnilingus, fellatio, buggery or pederasty, any penetration of the genital or anal openings of another person's body by any part of a person's body, and insertion of any object into the genital or anal openings of another person's body." Miss. Code Ann. § 97-3-97(a).

¶24.    At trial, Jalanivich testified that when she became conscious, she noticed that her

8

undergarments had been removed. She said, "I believed [May raped me] because my panties were off and I was just bloody all over and couldn't walk, my legs hurt." She also testified that before the incident, she had no redness or other vaginal trauma. The responding police officer testified that Jalanivich told her father at the scene that she may have been raped. Finally, the nurse who performed Jalanivich's sexual-assault examination testified that Jalanivich had vaginal redness and deep bruising inside her vagina.

¶25. We find that Jalanivich's testimony and the sexual-assault examination provide sufficient evidence of penetration of her vagina. Therefore, after viewing all of the evidence in the light most favorable to State, we note that any rational trier of fact could have found the essential elements of sexual battery beyond a reasonable doubt. We affirm the circuit court's judgment.

### III. Is evidence sufficient to sustain May's kidnapping conviction?

¶26. Again, "[w]hen addressing the legal sufficiency of evidence, we consider all evidence in a light most favorable to the State." *Jenkins v. State*, 101 So. 3d 161, 165 (¶12) (Miss. Ct. App. 2012) (citing *Beasley v. State*, 74 So. 3d 357, 364 (¶33) (Miss. Ct. App. 2010)). "The critical inquiry is whether the evidence shows beyond a reasonable doubt that the accused committed the act charged, and that he did so under such circumstances that every element of the offense existed." *Id.* (internal quotation marks omitted) (quoting *McBride v. State*, 61 So. 3d 174, 183 (¶29) (Miss. Ct. App. 2010)).

¶27. May was charged with kidnapping under Mississippi Code Annotated section 97-3-53 (Rev. 2014), which provides: "Any person who, without lawful authority and with or without

9

intent to secretly confine, shall forcibly seize and confine any other person, or shall inveigle or kidnap any other person with intent to cause such person to be confined or imprisoned against his or her will . . . ." Miss. Code Ann. § 97-3-53. The jury instruction echoed the statute:

> If you find from the evidence in this case, beyond a reasonable doubt that:
>
> 1. on or about September 10, 2015, in Jackson County, Mississippi;
>
> 2. the Defendant, Cameron Dwayne May;
>
> 3. did willfully, unlawfully, and feloniously, with or without the intent to secretly confine;
>
> 4. seize and confine Barbara Jalanivich with the intent to confine her against her will[,]
>
> then you shall find the defendant guilty of the crime of Count IV Kidnapping.

¶28. May alleges that there was no evidence of forced detention and that his entrance into Jalanivich's office was "incidental to the crime of assault." But Jalanivich testified that she had been prevented from leaving her office by May, and that she had tried to fight back to escape but could not. Furthermore, May even admitted to locking the door after he left "because [he] didn't want anybody to come in there and find her laying there."

¶29. Therefore, after viewing Jalanivich's and May's testimony in the light most favorable to State, we find that any rational trier of fact could have found the essential elements of kidnapping beyond a reasonable doubt. Thus, we affirm the circuit court's judgment.

### IV. Did the circuit court err when it denied May's motion to suppress his statement to the police?

¶30. "In reviewing the trial court's denial of a petitioner's motion to suppress confessions,

10

we apply the familiar general rule that since the trial court sits as the fact-finder when determining the issue of whether an accused's confession has been intelligently, knowingly and voluntarily given, we will only reverse the trial court's determination of this issue when such determination is manifestly wrong." *Keller v. State*, 138 So. 3d 817, 835 (¶16) (Miss. 2014) (quoting *Glasper v. State*, 914 So. 2d 708, 716 (¶21) (Miss. 2005)). "[W]e will not disturb the trial court's determination on the admissibility of a confession unless the trial court applied an incorrect legal standard, committed manifest error, or rendered a decision which was contrary to the overwhelming weight of the evidence." *Id.*

¶31.    During custodial interrogation in Florida, May admitted to assaulting Jalanivich after he read and acknowledged his *Miranda*[3] rights. Several minutes into the interrogation, but after May's admission, May responded to the officer's additional questions: "That is what, see I actually wanted to speak to my lawyer first before I spoke to you guys." But the interview continued, and May discussed additional charges with the officers. Around the eighteen-minute mark, he stated, "Okay well I can't talk about why until I speak with a lawyer first because I have to know, because I have to actually have some kind of legal counsel." The police officers ended the interview. May moved to suppress his statement, and the circuit court granted in part and denied in part his motion. Under Mississippi caselaw, including *Franklin v. State*, 170 So. 3d 481 (Miss. 2015), *Barnes v. State*, 30 So. 3d 313 (Miss. 2010), and *Harris v. State*, 123 So. 3d 925 (Miss. Ct. App. 2013), the court found that May's first statement was "a statement of his past, and not his present, desire," whereas his

---

[3] *Miranda v. Arizona*, 384 U.S. 436 (1966).

11

last statement was an unequivocal invocation of his rights.

¶32. *Miranda v. Arizona*, 384 U.S. 436 (1966), requires custodial interrogation to be preceded by advising the defendant of his right to remain silent and his right to an attorney. "If the defendant invokes his right to counsel, the interrogation must cease until an attorney is present." *Barnes v. State*, 30 So. 3d 313, 316 (¶9) (Miss. 2010). But, the defendant "must articulate his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney." *Id.* (citing *Davis v. United States*, 512 U.S. 452, 459 (1994)). That invocation must be unambiguous. *Harris v. State*, 123 So. 3d 925, 933 (¶23) (Miss. Ct. App. 2013).

¶33. The police officers advised May of his right to remain silent and his right to an attorney. May read those rights and signed his name acknowledging that he understood them. Still, May asserts that the entire interrogation should be excluded. But the circuit court correctly found May's first statement that he "actually wanted to speak to [his] lawyer first" was not an unambiguous invocation of his right. Rather, the statement was "mere mention of a past desire to speak with an attorney . . . ." However, May's later statement constituted an unambiguous articulation of May's desire for counsel. And, as such, the circuit court correctly found that all questioning after that point to be excluded. Thus, we affirm the circuit court's judgment.

## CONCLUSION

¶34. We find that double jeopardy bars the second aggravated-assault conviction, but that evidence was sufficient to sustain his battery conviction and kidnapping conviction. We also

12

find that the circuit court did not err when it denied May's motion to suppress his statement to the police. Thus, we affirm the convictions in Counts I, III, and IV. We reverse and render the conviction in Count II. Because the sentence for Count II was for twenty years to run concurrently with Counts III and IV sentences of thirty years each, the case is not remanded for sentencing.

¶35. **AFFIRMED IN PART; REVERSED AND RENDERED IN PART.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, FAIR, WESTBROOKS AND TINDELL, JJ., CONCUR. WILSON, J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION. CARLTON, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION.**

**CARLTON, J., CONCURRING IN PART AND DISSENTING IN PART:**

¶36. I would affirm the convictions and judgment imposed by the trial court in this case. I therefore concur in part and dissent in part with the majority's decision that finds Counts I and II collectively violate the right against double jeopardy.

¶37. Pursuant to the precedent of the Mississippi Supreme Court and this Court, the test to determine whether a criminal defendant's right to be free from double jeopardy has been violated is the *Blockburger* "same elements" test. *See Watkins v. State*, 101 So. 3d 628, 632 (¶12) (Miss. 2012); *Towner v. State*, 812 So. 2d 1109 (¶22) (Miss. Ct. App. 2002). Under the *Blockburger* test, May was not subjected to double jeopardy because the two aggravated-assault offenses under Count I and Count II require proof of a different element under two separate provisions within section 97-3-7(2)(a) of Mississippi's aggravated-assault statute. *Blockburger*, 284 U.S. at 304. Also, even though Mississippi has not approved of, used, or adopted the "unit of prosecution" test, May's convictions do not offend the protection of

13

double jeopardy under that test either because Mississippi's statute plainly and unambiguously sets forth three separate and distinct ways of committing the crime of aggravated assault.

¶38.    The facts showed in this case that May first attacked Barbara by charging her and beating her head and face, causing serious bodily injury, including a mandible bone fracture, pterygoid fracture, and hemorrhages. The State charged this aggravated-assault offense in Count I under section 97-3-7(2)(a)(i), which covers those circumstances under which a person attempts to cause, or causes "serious bodily injury to another . . . purposely, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life."

¶39.    May then choked Barbara, causing bodily injury to her by "[a] means likely to produce death or serious bodily harm"—May strangled Barbara causing her to become unconscious and causing injury to her neck.  The State charged this different aggravated-assault offense, committed with means likely to produce death or serious bodily injury, in Count II under section 97-3-7(2)(a)(ii).

¶40.    Section 97-3-7(2)(a) clearly and unambiguously sets forth three separate and distinct ways of committing the crime of aggravated assault.  In this case, the offenses set forth in Count I and Count II are charged under separate and distinct provisions of section 97-3-7(a)(2), subsection 97-3-7(a)(2)(i) and subsection 97-3-7(a)(2)(ii), each containing an element not present in the other.  In *Towner*, we recognized that "[a] relatively recent restatement of *Blockburger* was that when 'each [separately charged crime] requires proof

14

of a fact that the other does not, the *Blockburger* test is satisfied, notwithstanding a substantial overlap in the proof offered to establish the crimes. . . .'" *Towner*, 812 So. 2d at 1114 (¶22) (quoting *Iannelli v. United States*, 420 U.S. 770, 785 n.17 (1975)). Although Count I and Count II both involve the same victim, the means by which May harmed Barbara, and the injuries she suffered, were separate and distinct under each Count, each requiring proof of facts that the other does not. In contrast to the majority, I would affirm the trial court's convictions and judgment of May on both Counts I and II.